## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| TILE OUTLETS OF AMERICA, LLC, | CASE NO. 09-61261-pwb |
| Debtor. | |

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| TOA HOLDINGS, INC., | CASE NO. 09-85614-pwb |
| Debtor. | |

# PLAN OF REORGANIZATION
# PROPOSED BY
# TILE OUTLETS OF AMERICA, LLC
# AND TOA HOLDINGS, INC.

### OCTOBER 16, 2009

**Gus H. Small, Esquire**
**Karen Fagin White, Esquire**
**Anna M. Humnicky, Esquire**
**Cohen Pollock Merlin & Small, P.C.**
**3350 Riverwood Parkway**
**Suite 1600**
**Atlanta, GA 30339**

**Counsel for Debtors**

**NO MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS APPROVED BY THE BANKRUPTCY COURT HAVE BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

508900v4

## PLAN OF REORGANIZATION

## ARTICLE I.

### INTRODUCTION

Tile Outlets of America, LLC ("Tile Outlets"), and TOA Holdings, Inc. ("Holdings," collectively with Tile Outlets, the "Debtors"), the Debtors in the above-referenced Bankruptcy Cases, hereby propose and file the following Plan of Reorganization providing for the substantive consolidation of the two bankruptcy estates and for a reorganization of their debts. This Plan of Reorganization (the "Plan") should be considered in conjunction with the Disclosure Statement, which the Debtors have filed contemporaneously herewith.

## ARTICLE II.

### DEFINITIONS AND RULES OF INTERPRETATION

**2.1    Scope of Definitions and Rules of Interpretation.**

**2.1.1**  For purposes of the Plan, all capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Article II of the Plan. Any term used in the Plan that is not defined herein, but is otherwise defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

**2.1.2**  The rights and obligations arising under the Plan shall be interpreted, governed by, and construed and enforced in accordance with the laws of the State of Georgia (without regard to the conflict of law principles thereof), the Bankruptcy Code, and the Bankruptcy Rules, as appropriate.

**2.2    Definitions.**

**2.2.1** *Administrative Claim* shall mean an Allowed Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority payment pursuant to Section 507(a) of the Bankruptcy Code, including (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving either of the Estates and operating the Debtors' business, including wages, salaries, or commissions for services rendered after the Petition Date, (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses approved, awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code, (c) the post-Effective Date costs and expenses of administering the substantively consolidated Estate, and (d) all Allowed Claims that are entitled to be treated as

Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

**2.2.2** *Allowed Claim* shall mean a Claim against Debtors to the extent that such Claim is unpaid and (a) has been allowed by a Final Order of the Court; or (b) is (I) listed in the Debtors' Schedules, other than a Claim that is Scheduled at zero or unknown amount or as disputed, contingent, or unliquidated, or (ii) evidenced by a proof of claim that has been filed with the Court on or before the Bar Date or deemed filed pursuant to any Final Order of the Court or under applicable law, and as to which (A) no objection to its allowance has been timely filed, or (B) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order; or (C) is allowed pursuant to the terms of this Plan. Notwithstanding any other provision of the Plan, the term "Allowed Claim" shall not include any Claim held by a creditor against which the Debtors have asserted a Cause of Action that has the effect of precluding a Distribution with respect to such Claim. An Allowed Claim shall not include any interest accrued after the Petition Date (on any Claim other than a Secured Claim) or any penalty. In the case of Allowed Claims that are Tax Claims, any interest in excess of 7.5% shall be considered a penalty and not allowed.

**2.2.3** *Assets* shall mean all property of the Debtors and the Estates as defined in Section 541 of the Bankruptcy Code, including without limitation all right, title, and interest in and to any Avoidance Actions or other Causes of Action that the Debtors or the Estates may have as of the Effective Date or any time thereafter.

**2.2.4** *Avoidance Actions* shall mean any actions, causes of action, claims, demands, suits, or rights, created or arising in favor of the Debtors or their Estates under the Bankruptcy Code, including all claims, rights and causes of action arising under Section 510 or under any of Sections 542 through 553 of the Bankruptcy Code, in each case regardless of whether such actions, causes of action, claims, demands, suits or rights are commenced prior to or after the Effective Date.

**2.2.5** *Ballot* shall mean each of the voting forms that will be distributed by Order of the Court to holders of Claims in Classes that are impaired and entitled to vote under the Plan.

**2.2.6** *Bankruptcy Cases or Cases* shall mean the Chapter 11 bankruptcy cases of the Debtors now pending before the Court.

**2.2.7** *Bankruptcy Code* or *Code* shall mean the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended and applicable to these Cases.

**2.2.8** *Bankruptcy Rules* shall mean: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, (b) the Federal Rules of Civil Procedure, and (c) the Local Rules of the Court, all as amended from time to time and as applicable to this Case or proceedings therein.

**2.2.9** *Bar Date* shall mean the last date set by the Court to file proofs of claim asserting a pre-petition claim. The Bar Date was previously set by the Court in the Tile Outlets case as August 11, 2009.

**2.2.10** *Business Day* shall mean any day, excluding Saturdays, Sundays, and legal holidays, on which commercial banks are open for business in Atlanta, Georgia.

**2.2.11** *Cash* shall mean legal tender of the United States of America.

**2.2.12** *Causes of Action* shall mean any and all of the Debtors' and the Estates' claims, causes of action, suits, proceedings, liabilities, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, torts, penalties, statutory violations, agreements, promises, variances, setoff or recoupment rights, trespasses, damages, or judgments, whether asserted or unasserted, liquidated or unliquidated, based on any act or omission or other event occurring prior to the Effective Date, including Avoidance Actions and D&O Actions, and any claims acquired following the Petition Date, including without limitation all such Causes of Action described in the Disclosure Statement.

**2.2.13** *Claim* shall mean a claim against the Debtors or their Estates, as defined in Section 101(5) of the Bankruptcy Code.

**2.2.14** *Claims Litigation* shall mean any and all litigation or proceedings arising out of objections to Claims asserted against the Estates, or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estates.

**2.2.15** *Class* shall mean any class into which Claims or Interests are classified pursuant to this Plan.

**2.2.16** *Committee* shall mean the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Tile Outlets Chapter 11 case.

**2.2.17** *Confirmation Date* shall mean the date on which the Confirmation Order is entered on the docket of the Court.

**2.2.18** *Confirmation Hearing* shall mean the hearing on confirmation of the Plan, held pursuant to Section 1128 of the Bankruptcy Code.

**2.2.19** *Confirmation Order* shall mean the Order entered by the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**2.2.20** *Court* or *Bankruptcy Court* shall mean the United States Bankruptcy Court for the Northern District of Georgia or, in the event such Court ceases to exercise jurisdiction over the Bankruptcy Cases, such court or adjunct thereof that exercises jurisdiction over the Bankruptcy Cases in lieu of the United States Bankruptcy Court for the Northern District of Georgia.

**2.2.21** *Creditors' Claims Against Third Parties* shall mean any and all claims, causes of action, suits, proceedings, liabilities, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, setoff or recoupment rights, trespasses, damages, or judgments, whether asserted or unasserted, liquidated or unliquidated, that any creditor of Debtors could assert against any non-Debtor entity, including without limitation any current or former officer or director of Debtors or any law firm, accounting firm or other professional entity, that arises from or relates to that creditor's Claim against Debtors or either of them and which is based on any act or omission or other event occurring prior to the Effective Date.

**2.2.22** *D&O Actions* shall mean any proceeding and/or claim against persons who served prior to the Petition Dates as directors, officers, managers or employees of the Debtors, as well as any person or entity which allegedly conspired with, aided and abetted, or otherwise assisted such directors, officers, managers or employees engaged in certain acts and omissions as set out below. Persons who served prior to the Petition Dates as directors, officers, managers and employees of the Debtors (collectively, the "D&Os") include, without limitation, the following: Donald Aronin, Curt Rapp and Warren Lampert. Such proceedings and/or claims shall include, without limitation, (I) claims currently existing or which could be asserted based upon facts or events existing as of the Effective Date, regardless of whether they are covered by a D&O Policy, and (ii) any other claim against any person or entity alleged to have conspired with, aided and abetted, or otherwise assisted such D&Os in any way. The D&O Actions include, without limitation, wrongful acts and omissions that may have been committed by the D&Os while serving as directors, officers, managers or employees of the Debtors including, without limitation, breaches of fiduciary duty, negligence, gross negligence, recklessness, breaches of the duties of care, deepening insolvency, and other actions which may have led to the decline of the Debtors' business, lessened the value of the Debtors' assets, increased the amount of the Debtors' liabilities, or otherwise damaged the Debtors, the Debtors'

creditors, the member(s) of Tile Outlets, or the shareholders of Holdings, provided, however, it shall not include any claims against new and different directors, officers, managers or employees appointed as of or after the Effective Date.

**2.2.23** *Debtor*s shall mean Tile Outlets of America, LLC, inclusive of its wholly owned subsidiary Tile Outlets of Florida, LLC; Holdings; and the Reorganized Debtor, on a consolidated basis.

**2.2.24** *Designated Notice* means notice and an opportunity for a hearing as defined in section 102(a) of the Bankruptcy Code, with notice limited to Debtors, counsel for Debtors, the United States Trustee and other parties in interest who, after entry of the Confirmation Order, file a request for such notice with the clerk of the Court and serve a copy of such notice on counsel to the Debtors.

**2.2.25** *Disallowed Claim* shall mean (a) a Claim, or any portion thereof, that has been disallowed by a Final Order of he Court; (b) a Claim that has been listed in the Schedules at zero or unknown amount or as contingent, disputed, or unliquidated and as to which no proof of claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law; or (c) a Claim that has not been listed in the Schedules and as to which no proof of claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court, or other applicable law.

**2.2.26** *Disputed Claim* shall mean a Claim as to which an objection has been or may be timely filed by a party-in-interest with standing and which objection has not been withdrawn or determined by a Final Order and which is not the subject of a compromise and settlement as described in this Plan. Disputed Claims shall also include any Claim held by a creditor against which the Debtors have asserted a claim that has the effect, under Section 502(d) of the Bankruptcy Code, of precluding a Distribution with respect to such Claim.

**2.2.27** *Distribution* shall mean a distribution or payment under the Plan to the holders of Allowed Claims.

**2.2.28** *Effective Date* shall mean the first Business Day occurring at least fifteen (15) days after the entry of the Confirmation Order, provided that the Confirmation Order has become a Final Order (as defined herein).

**2.2.29** *Estate* shall mean the substantively consolidated bankruptcy estate created by the confirmation of the Debtors' Chapter 11 Plan of Reorganization, after the Confirmation Date.

**2.2.30** *Estates* shall mean the bankruptcy estates created by the commencement of the Debtors' Chapter 11 cases, prior to the Confirmation Date.

**2.2.31** *Facilitating Lenders* mean the lenders providing all or part of the funds necessary to pay the sums due the holders of Allowed Claims under this Plan.

**2.2.32** *Final Order* shall mean an Order or Judgment, the operation or effect of which has not been stayed, reversed, modified, or amended and as to which Order or Judgment the time to appeal, petition for certiorari, or seek re-argument, review or rehearing has expired and as to which no notice of appeal, petition for certiorari, or motion for re-argument, review or rehearing was timely filed or, if timely filed, the Order or Judgment has been affirmed by the highest court to which the Order or Judgment was appealed or from which the re-argument or rehearing was sought, or certiorari has been denied, and the time to file any further appeal or to petition for certiorari or to seek further re-argument or rehearing has expired.

**2.2.33** *General Unsecured Claim* shall mean an Allowed Claim that is not an Administrative Claim, a Priority Claim, a Secured Claim, a Priority Tax Claim, or is not otherwise separately classified.

**2.2.34** *Holdings Petition Date* shall mean September 30, 2009, the date on which TOA Holdings, Inc. filed its Chapter 11 case.

**2.2.35** *Interests* shall mean the equity membership interests in Tile Outlets of America, LLC, including the former equity interests of Paul Sanders and Charissa Rapp which were evidenced by Promissory Notes as of the Tile Outlets Petition Date, and the equity shareholder interests in TOA Holdings, Inc.

**2.2.36** *Petition Dates* shall mean January 16, 2009, the date on which Tile Outlets filed its Chapter 11 case, and September 30, 2009, the date on which Holdings filed its Chapter 11 case.

**2.2.37** *Plan* shall mean this Plan of Reorganization, as it may be modified or amended from time to time pursuant to Section 1127 of the Bankruptcy Code and Article X of the Plan.

**2.2.38** *Priority Claim* shall mean an Allowed Claim entitled to priority pursuant to Sections 507(a)(2) through and including 507(a)(10) of the Bankruptcy Code.

**2.2.39** *Priority Tax Claim* shall mean an Allowed Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

**2.2.40** *Reorganized Debtor* shall mean Tile Outlets of America, LLC, and TOA Holdings, Inc., on a substantively consolidated basis, after entry of the Confirmation Order and on the Effective Date of the Plan.

**2.2.41** *Scheduled* shall mean, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest, as set forth in the Debtors' Schedules.

**2.2.42** *Schedules* shall mean the Debtors' Schedules of Assets and Liabilities and Statement of Financial Affairs, all as amended, filed on or about January 16, 2009, and as amended from time to time in the Tile Outlets of America, LLC, case, and on September 30, 2009, in the TOA Holdings, Inc. case.

**2.2.43** *Secured Claim* shall mean an Allowed Claim secured by a lien on property of the Estate to the extent of the value, as of the Effective Date, of such lien as determined by a Final Order of the Court pursuant to Section 506 of the Bankruptcy Code, or as otherwise agreed in writing by the Debtors and the holder of such Allowed Claim.

**2.2.44** *Shares* shall mean a shareholder's equity interests in TOA Holdings, Inc.

**2.2.45** *Tile Outlets Petition Date* shall mean January 16, 2009, the date on which Tile Outlets filed its Chapter 11 case.

**2.2.46** *Unclaimed Property* means any funds payable to holders of Claims which are unclaimed.

**2.2.47** *Unsecured Claim Payment Date* shall mean the first Business Day which is thirty (30) days after the Effective Date.

## ARTICLE III.
## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1**   Introduction

**3.1.1**   All Claims and Interests in the Bankruptcy Case are classified in the Classes below. Notwithstanding any other provision of the Plan, a Claim in a particular Class is entitled to receive Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class, and only to the extent such Claim has not been paid, released, or otherwise satisfied prior to the Effective Date.

**3.1.2**   Under the provisions of Section 1123(a)(1) of the Bankruptcy Code, Claims of a kind specified in Sections 507(a)(2) [administrative expenses, etc.], 507(a)(3) [so-called "gap" claims] and 507(a)(8) [tax claims] may not be designated by the Debtors as being in particular classes. Notwithstanding this prohibition of classification, these Claims are nevertheless treated in Article IV of this Plan.

**3.2**   **Classification.**   Claims and Interests are classified as follows:

**Class 1 - Administrative Claims.**   Class 1 will consist of all Administrative Claims.

**Class 2 - Priority Tax Claims.**   Class 2 will consist of all Priority Tax Claims, including any Tax or Customs Claims held by the United States of America; the State of Georgia; the State of Florida; Gwinnett County, Georgia; Hillsborough County, Florida; Lee County, Florida; or other appropriate taxing authorities.

**Class 3 - Priority Claims.**   Class 3 will consist of all Priority Claims.

**Class 4 - General Unsecured Claims.**   Class 4 shall consist of all Unsecured Claims, other than Claims separately classified in Class 5 of this Plan.

**Class 5 – Landlords' Claims.**   Class 5 consists of the unsecured claim of the lessors of Debtors' business premises.

**Class 6 - Secured Claim of Branch Banking & Trust Company.**   Class 6 shall consist of the Secured Claim of Branch Banking & Trust Company.

**Class 7 - Secured Claim of GE Capital.**  Class 7 shall consist of the Secured Claim of GE Capital.

**Class 8 - Secured Claim of Toyota Financial Services.**  Class 8 shall consist of the Secured Claim of Toyota Financial Services.

**Class 9  - Other Secured Claims.**  Class 9 consists of the secured claims of Avaya Financial and Court Square Leasing.

**Class 10 - Interests.**  Class 10 consists of all Interests.

## ARTICLE IV.

## TREATMENT AND IMPAIRMENT OF CLAIMS, <u>INTERESTS AND PRIORITY CLAIMS</u>

The treatment and impairment of each of the classes of Claims and Interests set forth in Article III and the treatment and impairment of Priority Claims, are described as follows:

**4.1    Class 1 - Administrative Claims.**

**4.1.1  Treatment.**   Except as may otherwise be agreed between the Debtors and the holder of an Administrative Claim, the Reorganized Debtor will pay all Administrative Claims that are allowed as of the Effective Date in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable. Subsequent to the Effective Date, the Reorganized Debtor will pay each Administrative Claim that becomes allowed following the Effective Date in Cash in full as soon as reasonably practicable after the date the Claim is allowed; provided, however, that the Reorganized Debtor shall be authorized to make Distributions to Allowed Claims in Classes 4 and 5, after reserving an adequate amount to pay any Claims in Classes 1, 2, and 3 that are subject to objection at the time of such Distribution.

**4.1.2  Impairment.**   Class 1 is not impaired by the Plan.

 **4.2    Class 2 - Priority Tax Claims.**

**4.2.1 Treatment.**

**4.2.1.1**   To the extent that any Priority Tax Claims have not been satisfied prior to the Effective Date, the Reorganized Debtor will pay all remaining Priority Tax Claims in Cash in full on the Effective Date or as soon thereafter as

is reasonably practicable, but in no event later than the end of five (5) years from the Tile Outlets Petition Date.

**4.2.1.2** As to any Priority Tax Claim not paid in full on the Effective Date, the holder of such Priority Tax Claim shall also be paid regular quarterly installment payments which include an amount of interest and at a rate of interest ordered by the Court (or agreed by the holder and the Reorganized Debtor) as being necessary to assure the holder of the Priority Tax Claim the full value of the Priority Tax Claim, pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code, but in no event greater than 7.5% APR.

**4.2.1.3** To the extent that any Class 2 Claim is allowed after the Effective Date, it will be paid in full in Cash within thirty (30) days after the Claim is allowed, or, at the sole discretion of the Reorganized Debtor as soon thereafter as is reasonably practicable over a period no later than the end of five (5) years from the Petition Date by quarterly installment payments, including interest calculated as set forth above.

**4.2.1.4** All Class 2 Claims will be paid after Distributions have been made to Class 1, Class 3 and Class 6 Claims existing on the Effective Date, but prior to payment to any Claims in Classes 4 or 5; provided, however, that the Debtor shall be authorized to make Distributions to Allowed Claims in Classes 4 and 5 after reserving an adequate amount to pay any Claims in Classes 1, 2, and 3 that are subject to objection at the time of such Distribution.

**4.2.2  Impairment.** Class 2 is not impaired by the Plan.

**4.3    Class 3 - Priority Claims.**

**4.3.1 Treatment.**

**4.3.1.1** Debtors know of no Claims entitled to priority under Section 507 which are not Administrative Claims or Priority Tax Claims. To the extent there are such claims and, except as may otherwise be agreed between the Reorganized Debtor and the holder of a Priority Claim, the Reorganized Debtor will pay all Priority Claims that are allowed as of the Effective Date in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable.

**4.3.1.2** To the extent that any Class 3 Claim is allowed after the Effective Date, it will be paid in full in Cash within thirty (30) days after the Claim is allowed or as soon thereafter as is reasonably practicable.

**4.3.1.3** All Class 3 Claims will be paid prior to payment to any Claims in Classes 4 or 5; provided, however, that the Reorganized Debtor shall

be authorized to make Distributions to Allowed Claims in Classes 4 and 5 after reserving an adequate amount to pay any Claims in Classes 1, 2, and 3 that are subject to objection at the time of such Distribution.

**4.3.2  Impairment.**  Class 3 is not impaired by the Plan.

## 4.4  Class 4 -  General Unsecured Claims.

### 4.4.1  Treatment.

**4.4.1.1** Thirty (30) days after the Effective Date, and after the payment of Distributions (to the extent and in the manner contemplated by the Plan) to the holders of Allowed Claims in Classes 1 through 3 (and reserving of an appropriate amount for Disputed Claims in said Classes), the Reorganized Debtor shall make a one-time Distribution to holders of General Unsecured Claims equal to seven and one-half percent (7.5%) of such holder's Class 4 Claim in full and final satisfaction of such Claim.

**4.4.1.2** To the extent that any Class 4 Claim is allowed after the Effective Date, it will be paid seven and one-half percent (7.5%) of the Allowed Claim in Cash within thirty (30) days after the Claim is allowed or as soon thereafter as is reasonably practicable after the Claim is allowed.

**4.4.2  Impairment.**  Class 4 is impaired by the Plan.

## 4.5  Class 5 – Landlords' Claims.

### 4.5.1 Treatment

**4.5.1.1**   On the first day of the month following the Effective Date and on the first day of each subsequent month until the termination of each of Debtors' premises leases, respectively, Debtors shall pay the holders of Allowed Claims in Class 5 the monthly rental amounts due under each such lease, as previously amended.   For each of the first six (6) months following the Effective Date, Debtors shall also pay the holders of Allowed Claims in Class 5 one-sixth (1/6) of the accrued but unpaid rental which existed as of the Tile Outlets Petition Date pursuant to the respective premises leases.

**4.5.1.2** To the extent that any Class 5 Claim is allowed after the Effective Date, the six monthly payments of one-sixth (1/6) of the accrued but unpaid rental which existed as of the Tile Outlets Petition Date shall commence on the first day of the month following the Claim becoming an Allowed Claim.

**4.5.2   Impairment.**  Class 5 is impaired by the Plan.

**4.6  Class 6 - Secured Claim of Branch Banking & Trust Co.**

**4.6.1  Treatment.**  The Secured Claim of Branch Banking & Trust Co. shall be settled and satisfied in full as follows: on the Effective Date, the Reorganized Debtor shall pay BB&T a sum equal to BB&T's Allowed Claim, as of the Effective Date, said balance not to include any fees or amounts resulting from a default interest rate.

**4.6.2** Class 6 is not impaired by the Plan.

**4.7  Class 7 - Secured Claim of GE Capital.**

**4.7.1   Treatment.** The secured claim of GE Capital ("GE"), the Class 7 Claimant, shall be settled and satisfied in full as follows:

**4.7.1.1**  The secured claim of GE shall be allowed in the amount of $21,147.98 (the "GE Secured Claim").

**4.7.1.2** The GE Secured Claim will be settled and satisfied in full by payment of one hundred percent (100 %) of the allowed amount of such claim in monthly installments with interest accruing on the unpaid balance at the pre-Petition contract rate of nine and two tenths (9.2 %) percent per annum.  The amount of such monthly installments shall be computed by amortizing the principal and interest over a period of twelve months.

**4.7.1.3**  Monthly installment payments shall continue on the same date each month as provided in the contract between the parties, beginning after the Effective Date.

**4.7.1.4** The pre-Petition security interest held by GE in the assets of Debtors existing on the Petition Date shall continue in full force and effect until such time as the GE's Class 7 secured claim is paid in full.

**4.7.1.5** To the extent the GE Allowed Claim is in excess of the GE Secured Claim, the excess shall be treated as a Class 4 General Unsecured Claim.

**4.7.3**  Impairment. Class 7 is impaired by the Plan.

**4.8  Class 8 - Secured Claim of Toyota Financial Services.**

**4.8.1    Treatment.** The secured claim of Toyota Financial Services ("Toyota"), the Class 8 Claimant, shall be settled and satisfied in full as follows:

**4.8.1.1**  The secured claim of Toyota shall be allowed in the amount of $16,950.83 (the "Toyota Secured Claim").

**4.8.1.2** The Toyota Secured Claim will be settled and satisfied in full by payment of one hundred percent (100 %) of the allowed amount of such claim in monthly installments with interest accruing on the unpaid balance at the pre-Petition contract rate of eight and three quarters (8.75 %) percent per annum. The amount of such monthly installments shall be computed by amortizing the principal and interest over a period of twelve months.

**4.8.1.3**  Monthly installment payments shall continue on the same date each month as provided in the contract between the parties, beginning after the Effective Date.

**4.8.1.4**  The pre-Petition security interest held by Toyota in the assets of Debtors existing on the Petition Date shall continue in full force and effect until such time as the Toyota's Class 8 secured claim is paid in full.

**4.8.1.5** To the extent the Toyota Allowed Claim is in excess of the Toyota Secured Claim, the excess shall be treated as a Class 4 General Unsecured Claim.

**4.8.3**  Impairment. Class 8 is impaired by the Plan.

**4.9  Class 9 - Other Secured Claims.**

**4.9.1  Treatment.**

**4.9.1.1** Commencing on the appropriate day of the month following the Effective Date, the Class 9 Claimants shall receive amounts equal to the monthly amounts due under their respective contracts with Debtors until their claims are paid in full.

**4.9.1.2** Until paid in full, Class 9 Claimants shall retain their security interests in Debtors' equipment which secures the Class 9 Claimants' respective claims.

**4.9.2** Class 9 is not impaired by the Plan.

**4.10 Class 10 - Interests.**

**4.10.1  Treatment.** As of the Effective Date, all Interests shall be deemed cancelled and rendered null and void.  Holders of Interests shall not receive or

retain any property under the Plan on account of such Interests, and no distributions or dividends will be paid with respect to the Interests.

**4.10.2** Class 10 is impaired by the Plan. Holders of Interests are not entitled to vote to accept or reject the Plan and Class 10 is deemed to have rejected the Plan.

**4.10 Provisions Related to Class 1, Class 2, and Class 3 Claims.** The Plan contains provisions that set forth the treatment of Claims of a kind specified in Sections 507(a)(2) through 507(a)(10) of the Bankruptcy Code. Such treatment is consistent with the requirements of Section 1129(a)(9) of the Bankruptcy Code, and the holders of such Claims are not entitled to vote on this Plan. Notwithstanding any other provision of this Plan, pursuant to Section 1123(a)(1) of the Bankruptcy Code, Claims under Sections 507(a)(2) through 507(a)(10) of the Bankruptcy Code are not designated as classes of Claims for purposes of this Plan and all references in this Plan to Class 1, Class 2 and/or Class 3 Claims are for organizational purposes and convenience of reference only.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**5.1   Funding of Plan.** The Distributions contemplated by this Plan shall be made through the use of earnings and revenues of the Debtors and the Reorganized Debtor during the pendency of the Cases and following the Effective Date, including without limitation the cash collateral, which is subject to Branch Banking & Trust Co.'s Secured Claim until such claim is paid in full pursuant to this Plan. In addition, Debtor has arranged to borrow such sums as are necessary from the Facilitator Lenders to implement this Plan. The Facilitator Lenders will loan the Reorganized Debtor $550,000.00, in exchange for a first priority security interest and a second priority security interest, respectively, encumbering all assets of the Reorganized Debtor, except those subject to purchase money security interests. Further, the Distributions will be funded by the purchase of new membership interests in the Reorganized Debtor by Donald Aronin, Warren Lampert, Lori E. Kirschner and Helaine O. Lasky for the total sum of $495,000.00 on the Effective Date. Additional loans to the Reorganized Debtor may be made by Erica Aronin, if needed for the Reorganized Debtor's operations.

**5.2 Extinguishment of Certain Causes of Action.** On the Effective Date, pursuant to Section 1123(b) of the Bankruptcy Code, except as otherwise provided in the Plan, all Avoidance Actions and D&O Actions that the Debtors or the Estates had or had power to assert immediately prior to the Confirmation Date shall be extinguished.

**5.3  Settlement of Claims.**  Debtors shall be authorized to resolve objections to Claims without notice or further order of the Court.

**5.4  Exclusive Right to Modify Plan.**  Debtors shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to, or modifications of, the Plan until and including the Confirmation Date.

**5.6    Effectuating Documents; Further Transactions.**    Debtors shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE VI.

## ACCEPTANCE OR REJECTION OF THE PLAN

**6.1  Classes Entitled to Vote.**  Each impaired Class (other than Class 10) shall be entitled to vote to accept or reject the Plan.  Class 10 is deemed to have rejected the Plan and is not entitled to vote on the Plan.  Each unimpaired Class of Claims shall be deemed to have accepted the Plan, and shall not be entitled to vote to accept or reject the Plan.

**6.2  Claim Designation.**  The Plan Proponent reserves the right to seek to designate, pursuant to Section 1126(e) of the Bankruptcy Code, any Claimholder whose vote on the Plan was submitted for an improper purpose or was otherwise not submitted in good faith.

## ARTICLE VII.

## PROVISIONS REGARDING DISTRIBUTIONS

**7.1  Date of Distributions to Creditors.**   Payments to holders of Allowed Claims shall be paid as provided for in Article IV of this Plan.

**7.2  Interest on Claims.**  Except as provided in a Final Order entered in the Bankruptcy Case, (a) no holder of any Claim, other than the holders of a Claim in Classes 6, 7, 8 or 9, shall be entitled to interest accruing on or after the Petition Date on such Claim, and (b) interest shall not accrue or be paid upon any Disputed Claim with respect to the period from the Petition Date to the date a Distribution is made thereon if and after such Disputed Claim, or any part thereof, becomes an Allowed Claim.

**7.3   Method of Payment.**   The Reorganized Debtor shall be the Disbursing Agent under the Plan.  All payments made pursuant to this Plan shall be in Cash or by any means reasonably selected by the Reorganized Debtor, including check or wire transfer.

**7.4  Unclaimed Property.**

**7.4.1**   Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been presented and paid within ninety (90) days of their issuance, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such property and (d) checks (and the funds represented thereby) which are not mailed due to the lack of required tax identification information, but only following two mailed requests for this tax identification information.

**7.4.2**  For a period of the later of one year following the first Distribution to a Class of Claims or 180 days after a Distribution is made to a claimant on account of which Unclaimed Property first results (said period being hereinafter referred to as the "Claiming Period"), Unclaimed Property shall be held solely for the benefit of the holders of Allowed Claims which have failed to claim such property. During the Claiming Period, Unclaimed Property due the holder of an Allowed Claim shall be released and delivered to such holder upon presentation of proper proof by such holder of its entitlement thereto.

**7.4.1**   In the event that there is Unclaimed Property with regard to any Claim, Debtor shall, until such Unclaimed Property is claimed or the Claiming Period with regard to the holder of such Claim has expired, retain all subsequent Distributions due with regard to such Claim.

**7.4.2**  After the Claiming Period with regard to such holder has expired, no subsequent Distributions shall be made on account of such Claim, and such Claim shall be treated as being disallowed, waived, and satisfied; provided, however, that the Claiming Period may be extended for the holder of any Allowed Claim by agreement between the Claimant and Debtor.  At the end of the Claiming Period, the holder of an Allowed Claim theretofore entitled to Unclaimed Property shall cease to be entitled thereto and the Unclaimed Property shall become the property of the Reorganized Debtor.

**7.4.3**  All parties entitled to participate in Distributions under this Plan shall be required to notify the Debtor in writing of any change in the address to which Distributions are to be sent.

**7.4.4**   These provisions shall apply without regard to any applicable non-bankruptcy laws with respect to unclaimed property.

**7.5   Rounding.**   Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment made by the Reorganized Debtor may reflect a rounding of such fraction down to the nearest whole cent.

**7.6   DeMinimus Payments.**   Debtors shall not issue payments pursuant to this Plan on account of any Claim for which the Distribution would equal $15.00 or less.

ARTICLE VIII.

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**8.1   Assumption.**   Executory contracts and unexpired leases that have not been previously assumed or rejected shall be deemed assumed as of the Effective Date.

**8.2   Cure of Defaults.**   All cure payments which may be required by Section 365(b)(1) of the Code under any executory contract or unexpired lease shall be made by the Reorganized Debtor on the Effective Date or as soon as practicable thereafter except as otherwise provided in Section 4.5 hereof.  In the event of a dispute regarding the amount of any cure payment, the ability of the Reorganized Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption or assignment, the Reorganized Debtor shall make such cure payments required by Section 365(b)(1) of the Code following the entry of a Final Order resolving such dispute.  The Reorganized Debtor shall cure all other non-bankruptcy defaults existing under any executory contract or unexpired lease assumed.

**8.3   Claims for Damages.**   Each person who is a party to an executory contract or unexpired lease, previously rejected by Debtors during the pendency of the Cases shall be entitled to file, not later than thirty (30) days after Court approval of such rejection, a proof of claim for damages alleged to arise from the rejection of such executory contract or unexpired lease to which such Person is a party.  Payment of such Claim (consistent with the payments received by holders of other Claims in the Class into which such Claim falls, as determined by Section 8.4 hereof) shall be made on the later of (I) the tenth (10th) day after the expiration of the time for filing an objection in respect of any proof of claim provided it is a Business Day, or the first Business Day thereafter if the tenth day is not a Business Day and (ii) the tenth (10th) day after the Claim has been allowed by a Final Order provided it is a Business Day, or the first Business Day thereafter if the tenth day is not a Business Day, provided that no such payments shall be made before the Effective Date.

**8.4   Classification of Claims.**   Allowed Claims arising out the rejection of executory contracts or unexpired leases shall be Class 4 Claims.

## ARTICLE IX.

## <u>RETENTION OF JURISDICTION</u>

Until the Cases are closed, the Court shall retain jurisdiction over all matters arising out of or relating to the Cases, including, but not limited to, the following matters:

**9.1**  To determine the allowance or classification of Claims or Interests under this Plan and to determine any objections thereto;

**9.2**  To construe and to take any action to enforce this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan;

**9.3**  To determine all applications for allowance of compensation or reimbursement of expenses;

**9.4**  To determine any other request for payment of Administrative Expenses;

**9.5**  To resolve any dispute regarding the implementation or interpretation of this Plan;

**9.6**  To determine any and all motions pending on Confirmation for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

**9.7**  To determine all applications, motions, adversary proceedings, contested matters and other litigated matters that may be pending in this Court on or initiated after the Effective Date;

**9.8**  To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**9.9**  To modify the Plan pursuant to Section 1127 of the Code, or to remedy any apparent nonmaterial defect or omission in this Plan, or to reconcile any nonmaterial inconsistency in this Plan so as to carry out its intent and purpose;

**9.10**  To enter an order or final decree closing the Cases;

**9.11**  To determine matters under Section 505 of the Code relating to any tax for which the Reorganized Debtor may be liable;

**9.12**  To consider and act on the compromise and settlement of any claim against the Debtors or Debtors-in-Possession or their Estates;

**9.13**  To determine all questions and disputes regarding title to the assets of the Debtors, Debtors-in-Possession, the Estates or the Reorganized Debtor; and

**9.14**  To construe, enforce and resolve all questions and disputes relating to employment agreements existing or approved by the Court at or prior to Confirmation.

## ARTICLE X

## EFFECTIVE DATE OF THE PLAN

**10.1  Effective Date.**  This Plan shall take effect on the Effective Date.

## ARTICLE XI

## CRAM-DOWN

Debtors hereby requests confirmation pursuant to the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that votes to reject the Plan.

## ARTICLE XII.

## SUBSTANTIVE CONSOLIDATION

Debtors hereby request that the Confirmation Order provide for the substantive consolidation of Tile Outlets of America, LLC, and TOA Holdings, Inc. into one entity, the Reorganized Debtor, under 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 1015.

## ARTICLE XIII.

## MISCELLANEOUS

**13.1  Headings.**  The headings of the articles, sections and subsections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

**13.2  Binding Effect.**  The Plan shall be legally binding upon and inure to the benefit of the Debtors, the Estates, the holders of Claims, the holders of Interests, the holders of Shares, and their respective successors and assigns.

**13.3  Notices.**  Any notice required or permitted to be provided to the Debtors under the Plan shall be in writing and served by overnight courier service or by certified mail, return receipt requested, addressed as follows:

**To Debtors:**
Tile Outlets of America, LLC
TOA Holdings, Inc.
c/o Don Aronin
3845 Holcomb Bridge Road
Suite 100
Norcross, Georgia  30092
*with a copy to:*

Karen Fagin White, Esquire
**Cohen Pollock Merlin & Small, P.C.**
3350 Riverwood Parkway
Suite 1600
Atlanta, GA 30339

**13.4  Prepayment.**  Unless the Plan or the Confirmation Order otherwise provides, the Reorganized Debtor shall have the authority to prepay, without penalty, all or any portion of an Allowed Claim at any time.

**13.5  Amendment to the Debtors' Organizational Documents.**  As of the Effective Date, the Debtors' organizational documents shall be deemed amended to include a provision that prohibits the issuance of nonvoting equity securities to the extent required by Section 1123(a)(6) of the Bankruptcy Code.

**13.6  Identity of Principals of the Reorganized Debtor.**  Don Aronin and Warren Lampert will serve as officers of the Reorganized Debtor.  Don Aronin will be the President and chief operating officer of the Reorganized Debtor. Warren Lampert will serve as Executive Vice President and Chief Financial Officer of the Reorganized Debtor.

**13.7  Amendments and Modifications.**  This Plan may be altered, amended or modified by Debtors at any time, subject, however, to Section 1127 of the Code. This Plan may not be altered, amended or modified without the written consent of Debtors.  Debtors may withdraw this Plan at any time.

508900v4

**13.8  Retention of Property of the Estate.**  Except to the extent the same is disposed of in accordance with the provisions of this Plan, the Reorganized Debtor shall retain all of the property of the Estates within the meaning of Section 541 of the Code.

**13.9  Discharge.**  The Reorganized Debtor shall receive a discharge of any indebtedness owed to any creditors for which payment is not provided in this Plan and to the full extent authorized in Section 1141(d) of the Code.

**13.10  Severability.**  If any section[s] or provision[s] of this Plan is found to be contrary to law or unenforceable, then at the option of the Debtors, such section[s] or provision[s] shall be deemed no longer a part of this Plan.

**13.11  Continuation of all Retiree Benefits.**  To the extent applicable to the Reorganized Debtor, all retiree benefits, as that term is defined in Section 1114 of the Code, shall be continued in accordance with Section 1129(a)(13) of the Code.

**13.12  Objections to Claims and Interests.**  All objections to any claim or interest shall be filed by the Debtors or other party in interest no later than sixty (60) days after the Effective Date.

**13.13  Applications for Compensation of Professional Persons.**  Except with respect to requests for compensation for services performed on and after Confirmation, each Person retained or requesting compensation in the Cases, pursuant to Section 327, 328, 330, 331, 503(b) or 1113 of the Code, shall be entitled to file an application for allowance of final compensation and reimbursement of expenses in the Cases until not later than thirty (30) days after the Effective Date.  Objections to each such application may be filed on or before the twentieth day thereafter.

**13.14  Payment of Compensation to Professional Persons for Services Rendered after Confirmation.**  Compensation and reimbursement of expenses earned and incurred by professionals performing services for the Reorganized Debtor after Confirmation shall be paid by the Reorganized Debtor monthly after rendition of bills to the Reorganized Debtor, and no further applications for compensation or reimbursements of expenses shall be necessary or required unless a dispute arises in regard thereto; in the event of any such dispute, the same shall be resolved by the Court after notice and hearing.

**13.15  U.S. Trustee Fees.**  The Debtors and the Reorganized Debtor, as appropriate, shall cause to be paid any and all fees of the Office of the United States Trustee as and when such fees become due.

Respectfully submitted this 16th day of October, 2009.

**COHEN POLLOCK
MERLIN & SMALL, P.C.**
Counsel for Debtors

_____/s/ Don Aronin_____

Don Aronin
President and Chief Operating
Officer, Tile Outlets of America LLC

_____/s/ Karen Fagin White_____

Gus H. Small
GA Bar No.: 653200
Karen Fagin White
GA Bar No.: 754450
Anna M. Humnicky
GA Bar No.: 377850
3350 Riverwood Parkway
Suite 1600
Atlanta, GA 30339
(770) 858-1288
Fax: (770) 858-1277
gsmall@cpmas.com
kfwhite@cpmas.com
ahumnicky@cpmas

_____/s/ Don Aronin_____

Don Aronin
Secretary, TOA Holdings, Inc.

508900v4